GUITERMAN, ROSENFELD & Co. *v.* UNITED STATES (No. 1452).[1]

ALUMINUM DISKS.

Reviewing the processes by which aluminum is prepared for market and also the legislation affecting aluminum itself, these disks are found not to be included in any of the terms "plates," "sheets," "bars," "strips," or "rods," as these are employed in paragraph 143, tariff act of 1913; nor is it aluminum in crude form or an alloy thereof under the same paragraph.—Universal Shipping Co. *v.* United States (4 Ct. Cust. Appls., 245; T. D. 33479).

United States Court of Customs Appeals, February 12, 1915.

APPEAL from Board of United States General Appraisers, Abstract 36158 (T. D. 34668).

[Affirmed.]

*F. E. Hamilton* for appellants.

*Bert Hanson,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The merchandise consists of aluminum disks. They were rated for duty by the collector of customs at the port of New York as "articles or wares not specially provided for" under the provisions of paragraph 167 of the tariff act of 1913. The protestant, who is the appellant here, makes claim that they are properly dutiable under the provisions of paragraph 143 in said act as "aluminum in plates or sheets."

Aluminum as the subject of tariff legislation first received specific mention in the tariff act of 1890. Something of the development of the aluminum industry as well as the purpose of Congress to divide for tariff purposes the crude from the manufactured product is marked by the respective provisions of that and subsequent tariff acts. They are as follows:

The tariff act of 1890, paragraph 186, reads:

186. Aluminium or aluminum, in crude form, alloys of any kind in which aluminum is the component material of chief value, fifteen cents per pound.

The tariff act of 1894, paragraph 157, reads:

157. Aluminum, in crude form, alloys of any kind in which aluminum is the component material of chief value, ten cents per pound.

The tariff act of 1897, paragraph 172, reads:

172. Aluminum, and alloys of any kind in which aluminum is the component material of chief value, in crude form, eight cents per pound; in plates, sheets, bars, and rods, thirteen cents per pound.

The tariff act of 1909, paragraph 172, reads:

172. Aluminum, aluminum scrap, and alloys of any kind in which aluminum is the component material of chief value, in crude form, seven cents per pound; in plates, sheets, bars, and rods, eleven cents per pound; * * *.

---

[1] Reported in T. D. 35155 (28 Treas. Dec., 251).

The tariff act of 1913, paragraph 143, reads:

143. Aluminum, aluminum scrap, and alloys of any kind in which aluminum is the component material of chief value, in crude form, 2 cents per pound; aluminum in plates, sheets, bars, strips, and rods, 3½ cents per pound; * * *.

Thus it is shown that until 1897 no division or separate duty was had distinguishing the crude aluminum and alloys from manufactures thereof. In 1897, by the tariff act of that year, Congress distinguished and prescribed different rates of duty upon aluminum and alloys thereof, evidently the crude material, from certain enumerated manufactures thereof, to wit, plates, sheets, bars, and rods. By the tariff act of 1913 Congress added an additional enumeration, "strips."

This record defines the method of aluminum manufacture. It seems to make its first commercial appearance in the block forms, which vary in size, the variances being intentional according to the size of a sheet, plate, bar, rod, or other form of aluminum which is to be produced from the block. To produce the latter the block is heated and passed through rolls, which is called a breaking-down process. This process is continued until the product is of the desired thickness. The resultant rough edges are cut, trimmed off, or flattened out, whereby is produced what is known as "sheets" and "strips." From these sheets and strips in turn are produced among other things these importations. It appears from the record that their size is controlled by the specific order, as they are made in any size only according to order, which could be for no other purpose or reason than to fit a certain requirement in use, thereby becoming as imported part of a completed article. This is true also of squares and oblongs, and possibly other specifically ordered shapes, forms, or sizes of aluminum. Whatever confusion of the respective names may occur in the record, it satisfactorily appears that the above-stated steps of manufacture and customs of trade in ordering are uniformly exercised in order to produce aluminum circles or disks. It likewise appears that it is more expensive to produce a circle than it is a square or oblong. This is obvious, and shown by the answer of the witness to the direct question, wherein he states:

It is pretty hard for me to answer, not having a knowledge of that part of the manufacture. Of course, I can only say that my firm buys circles really at the same price we do strips *when you consider the loss there is from scrap*.

This court, in Universal Shipping Co. *et al. v.* United States (4 Ct. Cust. Appls., 245; T. D. 33479), had merchandise of the identical form and material before it for consideration. That merchandise consisted of so-called aluminum "blanks," stated by the court to be in two forms, one square and the other cut in the form of a circle. The court held that they were not plates or sheets within the pro-

visions of paragraph 172 of the tariff act of 1909, and were properly dutiable as articles composed of aluminum, partly or wholly manufactured, under paragraph 199 of that act. This decision was before the Congress, having been made May 23, 1913, at the time of the enactment of the tariff act of that year, and must be deemed to have been considered by Congress. The only change made in the act of 1913 was to add the word "strips" to the enumerated classes of aluminum given the specific rate of duty. Had it been the purpose of Congress to include circles such as these, we must assume that apt words for that purpose would have been used. On the other hand, strips being in the same status of manufacture as sheets from which circles are made, cogent reason is shown why circles were not so included by Congress but left as classified at a higher duty.

We are of the opinion that these importations are not for the reasons stated included in any of the terms plates, sheets, bars, strips, or rods, as used in paragraph 143 of the tariff act of 1913, nor is it aluminum in crude form nor an alloy thereof under the same paragraph. On the contrary, the history of this provision of the law, as disclosed by its predecessor paragraphs and the testimony in this case, confirms the court in the belief that it is a more advanced article of manufacture than was intended by Congress to be included within the claimed provision of the act.

The protestant in this case makes claim under subsection 7, paragraph J, section 4, of the tariff act of October 3, 1913. This point, however, was not decided by the Board of General Appraisers and was not argued nor submitted for decision in, and therefore not decided by, this court. It is deemed to have been waived.

*Affirmed.*