(C. D. 1328)

M. E. DEY & COMPANY, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 17, 1951)

*Wallace and Schwartz* (*Joseph Schwartz* and *Barnes, Richardson & Colburn* (by *Edward N. Glad*) of counsel) for the plaintiff.
*David N. Edelstein* (*John J. Antus*, special attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: Upon motion of plaintiff, the two protests above enumerated were consolidated for trial.

The merchandise to which the protests relate is described on the consular invoices as "Reflector Circles" and "Aluminum Circles," which are represented by exhibit 1. It is not disputed that they are 18½ inches in diameter, 0.057 inch in thickness, and in chief value of aluminum.

The collector of customs classified the merchandise in paragraph 397 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 397) which provides for "Articles or wares not specially provided for, if composed wholly or in chief value of * * * aluminum," and duty was imposed thereon at the rate of 45 per centum ad valorem.

The claim relied upon by plaintiff is that the merchandise is dutiable at 6 cents per pound pursuant to the terms of paragraph 374 of said act (19 U. S. C. § 1001, par. 374), as modified by the trade agreement between the United States and the United Kingdom, 74 Treas. Dec. 253, T. D. 49753, which became effective January 1, 1939. Paragraph 374, as modified, reads as follows:

Aluminum, and alloys (except those provided for in paragraph 302, Tariff Act of 1930) in which aluminum is the component material of chief value, in coils, plates, sheets, bars, rods, circles, disks, blanks, strips, rectangles, and squares, 6¢ per lb.

The "Report of Collector on Protest" in each case indicates that the collector was governed in his decision by "Abstract 42587 (Vol. 35—1918) and T. D. 39275 (Vol. 42—1922)." For the purposes of this opinion, those cases will be identified, respectively, as follows: *B. R. Lawrence* v. *United States*, 35 Treas. Dec. 360, Abstract 42587; and *American Foreign Service Corporation* v. *United States*, 42 Treas. Dec. 135, T. D. 39275. They will be discussed, *infra*.

Plaintiff introduced the testimony of two witnesses, while the defendant offered none. Since the case was submitted, defendant has filed notice that "upon consideration of the record made and the brief filed by counsel for the plaintiff," it did not desire to file a brief on behalf of the United States.

The first witness introduced by plaintiff was Clyde W. Shaw, who testified that he was formerly director of purchases with the Line Material Co. of Milwaukee, Wis., the importer of the merchandise here in controversy, engaged in the manufacture and distribution of lighting equipment, transformers, hardware, and street-lighting equipment sold to the utilities for rural electrification; that he had been in this line of work about 12 or 13 years, during which time he had purchased from 30,000 to 40,000 aluminum circles which were made in the United States and about 9,800 of such articles from the Canadian Line Material, Ltd., Ontario, Canada, which comprised the shipments here under consideration. The witness explained that after the late war there was an acute shortage of aluminum in the United States, and, as it was available in Canada, these purchases were made.

In describing the use of the importations the witness testified, "They needed them in processing of street lighting heads, that is the dome or the cover that you see on the street light"; they were processed by "stamping and drawing and assembling the finished unit from the raw material." He stated that "* * * any conical shape or round shape article is usually processed from a circle because of its desirability, and it presses and it requires less trim and less work in production"; that certain outside lighting equipment and various parts may be made from either aluminum sheets or circles, but it is more economical to make them from circles; that aluminum circles range in diameter from around 12 inches to 36 inches. The witness further testified that aluminum circles are stamped or cut out of aluminum sheets:

On cross-examination, Mr. Shaw gave the following testimony:

X Q. Mr. Shaw, are these disks made entirely of aluminum?—A. An alloy aluminum.

X Q. What is the distinction between a sheet and a circle?—A. A circle is made from a sheet.

When asked by what name the imported articles were known, the witness replied, "* * * as a circle."

JUDGE LAWRENCE: You buy them as circles?

THE WITNESS: Yes, sir.

When purchased from the Aluminum Company of America, they are ordered "As aluminum circles."

Plaintiff's second witness, Austin Thomas Murphy, testified that he had been with the Line Material Co. for 12 years as assistant foreman and general foreman of the machine shop; the work done in the machine shop is "Fabricating of bar stock, sheets, castings, circles"; he saw the importations in question when they arrived at the plant of his company, and he recognized exhibit 1 as a circle of aluminum 18½ inches in diameter. At the plant the articles "were fabricated into various parts, primarily they went through a series of formation and stamping that resulted into a particular sheet for a required part. * * * They are taken to the Punch Press Department where they are blanked out; by that I mean they are cut to various shapes as required."

The witness produced five pieces of material representing the circles after various forms had been stamped from them. These were received in evidence as collective illustrative exhibit 2. The witness then stated that from two to six pieces, depending upon the part being produced, could be stamped out of each circle. As representative of such stampings, five pieces of material were received in evidence as collective illustrative exhibit 3.

The witness testified further that aluminum circles may be used for making either reflectors or deflectors; that the imported circles were utilized in making deflectors; "A reflector could be classified as a housing where the bulb or lamp is contained primarily within the design to reflect the light usually toward the street. The deflector is a piece of material placed behind the light under the reflector to guide the light either to the road or the sidewalk, as the case may require." After the blanking or stamping operation, it appears that various holes are pierced in the articles, which are then "put through a series of forming operations, one, two, or three, as required." Illustrative exhibit 4 was introduced to represent one of the stampings which had been shaped or pierced.

Next, "the deflector is processed with an anodizing and a polishing process to give a good finish. * * * Then they are usually assembled into the various components required, and that marks the

end of the piece until it is actually sold." Illustrative exhibit 5 was. introduced to represent one of the finished articles made from the. circles in question known as a deflector assembly.

When asked if exhibit 1 has any practical use except to cut out pieces like collective illustrative exhibits 2 and 3, the witness replied, "It has not. It must be fabricated into something else." Mr. Murphy stated that in the preparation of the sheet from which the circles are cut, about 0.5 of 1 per centum of manganese is added.

It is believed that the foregoing contains all the salient facts of record.

There seems to be no dispute that the importations consist, in fact, of circles or disks composed of aluminum or an alloy in which aluminum is the component material of chief value, as described in paragraph 374, *supra*, as modified by the trade agreement with the United Kingdom.

In the *B. R. Lawrence* case, *supra*, the question before the court was whether a certain product of aluminum should be classified in paragraph 167 of the Tariff Act of 1913 as "Articles or wares not specially provided for  *  *  *  composed wholly or in chief value of  *  *  * aluminum" or whether it should be classified in paragraph 143 of said, act, which provided for "aluminum in  *  *  *  sheets." In the course of its opinion, the court there said:

> Inasmuch as there is nothing in the present record which tends to show that, as commercially understood, the aluminum in question is in the form of sheets, or which could be said to overcome the previous findings of this board and of the courts that aluminum in sheets contemplates the resultant product of the aluminum rolling mill with the rough edges cut, trimmed off, or flattened out, we hold the articles to be further advanced than sheets and to be properly dutiable as partly manufactured articles composed entirely of aluminum, and as such correctly· classified by the collector under paragraph 167.

In the case of *American Foreign Service Corporation, supra,* the merchandise consisted of pieces of aluminum measuring 15 by 19 inches and 19 gauge in thickness. In that case the classification by the collector and the claim of the importer were the same, respectively, as in the *B. R. Lawrence* case, *supra*. In its opinion the court stated:

> While the testimony of the witnesses for the importers shows that pieces of aluminum of the size mentioned would be included within the term "sheet aluminum" or "aluminum in sheets" as understood in the trade and commerce of this country on and prior to October 3, 1913, still an equal number of witnesses appeared for the Government and testified that said merchandise is commercially known and recognized as "pieces of sheet aluminum."

The court reviewed the case of *Universal Shipping Co.* v. *United States*, 4 Ct. Cust. Appls. 245, T. D. 33479, involving certain forms, one square and one circular, which had been cut from aluminum sheets, wherein it was held that those articles were not "aluminum in  *  *  *

sheets," as provided in paragraph 172 of the Tariff Act of 1909, and the case of *Guiterman* v. *United States*, 5 Ct. Cust. Appls. 514, T. D. 35155, which it stated involved the same question as was before it in *American Foreign Service Corporation*, and concluded its opinion in the latter case by saying:

The prevailing rulings on the subject support the testimony of the witnesses for the Government herein as to what constitute "aluminum in sheets" as intended in paragraph 143, and because of the conflicting views expressed by the witnesses herein we do not consider the testimony of the importer's witnesses as sufficient to warrant us in reversing said rulings.

It is significant, however, that the aluminum paragraphs in the Tariff Acts of 1909 and 1913 (paragraphs 172 and 143, respectively) were materially changed with the passage of later tariff acts.

The Tariff Act of 1909 (paragraph 172), insofar as material here, provided for "Aluminum, * * * and alloys of any kind in which aluminum is the component material of chief value, in crude form, * * *; in plates, sheets, bars, and rods, * * *."

The Tariff Act of 1913 (paragraph 143) was in substantially the same phraseology except that the rates of duty were changed and the words "strips" inserted between the words "bars" and "rods."

However, when the Tariff Act of 1922 was enacted, paragraph 374 not only provided for "Aluminum, * * * and alloys of any kind in which aluminum is the component material of chief value, in crude form, * * *" but also provided for aluminum and alloys of any kind in which aluminum is the component of chief value "in *coils*, plates, sheets, bars, rods, *circles, disks, blanks*, strips, *rectangles*, and *squares*, * * *." [Emphasis added.] The italicized words first appeared in said paragraph 374 of the Tariff Act of 1922 and were repeated in paragraph 374 of the Tariff Act of 1930. Obviously, the added words were deliberately incorporated in paragraph 374 in order to broaden the scope of the paragraph and to make it more comprehensive.

An ocular inspection of exhibit 1, representing the merchandise in controversy, together with other evidence in the case, leaves no room for doubt that the commodity is in fact aluminum or an alloy in which aluminum is the component material of chief value in "circles" or "disks" within the meaning of said paragraph 374, and therefore subject to duty at the rate of 6 cents per pound, as provided by the modification thereof, *supra*, as alleged by the plaintiff. That claim in the protests is sustained. All other claims are overruled.

Judgment will be entered accordingly.